**Affirmed; Opinion Filed February 13, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01321-CV

**MARK RINES, Appellant**
**V.**
**CITY OF CARROLLTON, TEXAS, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-07615**

## MEMORANDUM OPINION
Before Justices Lang, Brown, and Whitehill
Opinion by Justice Lang

Appellant Mark Rines, proceeding pro se, filed this lawsuit against appellee City of Carrollton, Texas, alleging violations of the Texas Public Information Act ("TPIA"). *See* TEX. GOV'T CODE ANN. §§ 552.001–.353 (West 2012 & Supp. 2017). The trial court granted the City's plea to the jurisdiction and dismissed appellant's claims with prejudice.

In this pro se appeal, appellant asserts fifteen issues challenging the trial court's ruling.[1] We decide appellant's fifteen issues against him. The trial court's order is affirmed.

---

[1] As described in more detail below, appellant's fifteen issues assert, in essence, that the trial court abused its discretion and/or erred by failing to issue "Findings of Fact and Conclusions of Law (FOFCOL) that sufficiently narrowed the issues for this appeal"; granting the City's plea to the jurisdiction based on "conclusory, gatekeeper testimony alone"; "[d]ismissing this case 'with prejudice' while there is still remaining controversy"; not recognizing certain statutory bases for jurisdiction; refusing to order in camera review and discovery of certain information; and "failing to take appropriate action" respecting alleged violations of appellant's constitutional rights and several rules pertaining to professional conduct of attorneys and judges.

## I. FACTUAL AND PROCEDURAL CONTEXT

In January 2014, appellant made a TPIA request to the City for the "civil service files" of fourteen specified individuals who currently or previously served as City police officers. Further, in approximately March 2014, appellant made an additional TPIA request for a spreadsheet showing the most recent 1,000 TPIA requests received by the City. The City provided appellant with a cost estimate for the requested records and appellant paid that amount to the City.

After the City began processing appellant's requests, the City decided that some of the requested information would not be released without first obtaining rulings by the Texas Attorney General as to whether that information is subject to public disclosure requirements. *See id.* § 552.301. While waiting for those rulings, the City provided appellant with other requested information. Additionally, the City determined that a reduction of the amounts charged as described above was appropriate and refunded a portion of those charges to appellant.

In approximately June 2014, the City received rulings from the Attorney General respecting appellant's requests and provided appellant with information pursuant to those rulings. Shortly thereafter, appellant filed a complaint with the Attorney General alleging the City acted "in bad faith" in providing its initial cost estimates and appellant was therefore entitled to "three times the amount of the overcharge" pursuant to government code section 552.269(b). *See id.* § 552.269(b). In a letter to appellant dated August 28, 2014, the Attorney General stated in part,

> [T]he city calculated the estimated and actual charges using the rules established by this office and has provided an explanation for the reduction of the estimated charges. Accordingly, we are unable to find the city did not act in good faith. Thus, in this instance, you are not entitled to recover three times the amount of the overcharge.

In November 2014, appellant filed a complaint with the Attorney General pursuant to government code section 552.3215, alleging the City did not properly comply with his TPIA requests. *See id.* § 552.3215. An investigation conducted by the Attorney General resulted in an

April 28, 2015 "final amended determination" in which the Attorney General stated in part as follows:

> Because the city of Carrollton acknowledges that Mr. Rines did not receive documents he was entitled to, the Texas Attorney General Office determines that the city of Carrollton was in violation of the [TPIA] through most of 2014 and the beginning of 2015 in its failure to deliver to Mr. Rines all the material he requested that was required by law to be public.
> . . . .
> . . . As of today, the city of Carrollton has certified that all responsive information currently in their possession has been released though evidence provided by Mr. Rines suggests other responsive information did exist at some prior period in time (DVD video interviews of witnesses in [a particular police investigation] and the possibility of prior performance evaluations of several named officers). . . . The status of this other responsive information and why it is not in the possession of Carrollton any longer remains an issue that has not been adequately explained to the undersigned by the city of Carrollton.
> . . . This complaint was forwarded to the city of Carrollton. By way of a phone calls [sic] between the undersigned and [Carrollton city attorney Meredith Ladd], Ms. Ladd informed the undersigned that she worked with a commander at the Carrollton Police Department to obtain all information related to the [TPIA] request and that there is nothing else to furnish to Mr. Rines. . . . If sued, the city of Carrollton states they would offer everything furnished to Mr. Rines to a judge and swear that no other information exists. In addition, the city of Carrollton filled out a certification stating no other information exists and that all information they have has been provided to Mr. Rines. . . . Based on this, the State is not in a position on this date to determine that the city of Carrollton is in continuing violation of the [TPIA] because the Texas Attorney General cannot prove that documents sought still exist. In this "civil matter", the State is "accepting" the word of Carrollton that the documents no longer exist. A suit to retrieve documents that don't exist any longer would be fruitless. Therefore, at this point in time the State won't be taking further future action on the complaint. Evidence points to the possibility of illegal conduct on the part of somebody at Carrollton due to the "missing" information. This is based on the "missing" DVD interviews and possibility of missing performance evaluations. These conclusions are not to represent whether or not the undersigned believes any crime has been committed by Carrollton. If Mr. Rines believes a crime has been committed, the undersigned requests that Mr. Rines file a complaint with the appropriate local law enforcement agency and/or the Dallas County District Attorney because the Texas Attorney General has no criminal jurisdiction over this matter.

On July 7, 2015, appellant filed this lawsuit against the City, alleging violation of the TPIA. Specifically, in his "original petition," appellant contended in part the City (1) "has failed or refused to provide a reasonable copy of the content of fourteen Civil Service files requested";

–3–

(2) has provided him with "only a small part of expected digital, electronic content"; and (3) "overcharged [him] 210% of the eventual actual cost." Appellant asserted claims for (1) a temporary injunction to "seek and collect all missing information" related to his TPIA requests and provide it to him, investigate and prosecute the persons responsible for "the destruction of the missing information," and "cease and desist all malicious acts" towards appellant; (2) a permanent injunction "to properly maintain all Civil Service files, encourage the public and upper management to inspect the files regularly, and actively protect against the negative effects of political influence over police and firefighters"; (3) a permanent injunction to "move all civil service content to the internet," provide "reliable and verifiable online payment systems" and "spreadsheet compatible downloads" to all TPIA requestors, and "refrain from all future delay, misrepresentations, and frustrate [sic] tactics" respecting TPIA requests; and (4) various monetary relief, including an amount equal to "three times the initial estimates totaling $1192"; "delay and labor costs" that currently "total $164,000 and $156,960 respectively and continue[] to accrue until all requested information is received"; "additional labor charges" of $3,600 that were allegedly "accepted" by the City; and "all costs of this litigation."

The City filed a "Plea to the Jurisdiction and Motion to Dismiss" in which it asserted appellant's requested relief "falls into one of three categories: (1) requested government action, (2) retrospective monetary relief, and (3) City's production of documents." Further, the City contended (1) "[appellant] cannot compel the City to perform activities that are not required by statute, regulation, ordinance, or common law"; (2) "monetary relief sought as compensation for conduct occurring before the requested injunction is retrospective in nature" and therefore barred by sovereign immunity; and (3) "the balance of [appellant's] requested injunctive relief has been made moot" because the City has made "full and complete disclosure of records in its custody that respond to [appellant's] [TPIA] requests" and has "provided evidentiary support that it has

–4–

disclosed all responsive information it has in its custody." Attached to the plea to the jurisdiction and motion to dismiss were exhibits that included, among other things, (1) an August 17, 2015 affidavit of a City paralegal who testified in part "[t]he City has provided [appellant] with all responsive information in existence and in the City's custody in accordance with the Attorney General's rulings and in compliance with the [TPIA]" and (2) a February 23, 2015 "certification" from the City's officer of public information in which that individual stated, "I . . . certify that I have made available to [appellant] all existing responsive information that this governmental body owns, controls, or has a right of access to."

In response to the City's plea to the jurisdiction and motion to dismiss, appellant filed a document titled "Objections to Defendant's Answer." Therein, appellant requested in camera review and discovery respecting numerous City files and documents and stated he "objects" to the above-described affidavit and certification as "hearsay," "objects to the misrepresentation that no evidence of missing information has been provided to [the City]," and "objects" to the "mischaracterization" of his requested monetary relief as "retrospective." Further, appellant asserted (1) this lawsuit is not moot because he "has a plethora of evidence of still missing, required information"; (2) the monetary relief requested by him is "prospective" because his claims "attempt[] to motivate those within the City to stop illegal and lack of good faith efforts to delay and withhold public information"; (3) the City "failed to follow the cost rules by not including the digital content in its estimate, with a lack of good faith"; (4) sovereign immunity is inapplicable because the TPIA specifically waives immunity for "a suit for a writ of mandamus compelling a government body to make information available" and, when filing this lawsuit, he checked the box for "mandamus" in the "procedure or remedy" section on the electronic filing form; and (5) alternatively, the "ultra vires" exception to sovereign immunity applies in this case because his petition "proposes a felonious act of destruction of public information." The exhibits attached to

appellant's "objections" included, among other things, (1) a copy of the April 28, 2015 final amended determination of the Attorney General described above and (2) a chart summarizing the number and dates of performance evaluations in each personnel file provided by the City to appellant.

The City filed a reply to appellant's response in which it restated its arguments described above and, in addition, argued in part (1) "[b]ecause Carrollton cannot produce non-existent information—no matter how much the [appellant] thinks the information should exist—[appellant's] requested injunctive relief cannot provide a remedy for any alleged underproduction," and (2) "[appellant's] requested monetary relief stems directly from his claims of alleged past violations relating to the City's handling of his [TPIA] requests" and "[a]s such, the City's government immunity bars recovery of such relief." The exhibits attached to the City's reply included, in part, an October 19, 2015 affidavit of Ladd in which she testified in part (1) the City has not "acted in bad faith" toward appellant and (2) "[b]ased on the City's extensive search of its files, Carrollton has provided [appellant] with all responsive information in existence and in the City's custody in accordance with the Texas Attorney General's rulings and in compliance with the TPIA."

At the hearing on the City's plea to the jurisdiction and motion to dismiss, several City officials testified, including Ladd, City secretary Krystle Melinson, and the City police department's commander of professional standards, Derick Miller, describing their responsibilities and how they conducted the search for records. Further, those City officials stated the City has no information responsive to appellant's requests that was not given to him. Additionally, Ladd testified the City did not accept the charges described in appellant's petition.

Following that hearing, the trial court signed an October 28, 2015 order granting the City's plea to the jurisdiction as described above. Appellant filed a November 24, 2015 "amended

original petition" in which he repeated the assertions from his original petition described above and, among other things, added "culpable officials John and Jane Doe" as parties, claimed "harm from Ultra Vires acts of City officials in their individual, non-discretionary capacities," sought "prospective monetary relief for the anticipated ultra vires acts of the yet-to-be-discovered, culpable City officials in their individual capacities," and asserted he "prays for Writ of Mandamus" pursuant to government code section 552.321 to compel the City to produce the missing information, or, if the missing information has been destroyed or lost, to provide the names of those most culpable and the reasons why the permanent records are no longer in the City's custody."

Further, appellant filed a timely request for findings of fact and conclusions of law and a November 29, 2015 "Motion for Sanctions for Perjury and Reinstatement of the Cause." In his motion for sanctions and reinstatement, appellant asked the trial court to (1) "mandate disclosure of parties with first-hand knowledge of the information at issue," order the in camera review described above, and "stay the plea to the jurisdiction until such time as the substantive, evidentiary information at issue can be reviewed"; (2) in the alternative, modify the October 28, 2015 order to state that the dismissal is "without prejudice"; and (3) sanction Ladd "for perjury" based on her statements that she "has no knowledge of any missing permanent records." Also, appellant filed a supplement to that motion in which he stated in part "[t]he specific parties to this suit are still a pending issue in this cause." The attachments to appellant's supplement included a September 30, 2015 document titled "Initial Disclosures," in which the City was asked to disclose "[t]he name, address, and telephone number of any potential parties" and responded that it "is not currently aware of any potential parties to this litigation."

The City filed a response to appellant's motion for sanctions and reinstatement in which it stated in part (1) appellant's motion for "reinstatement" should be denied because appellant "has

not provided [the trial court] with a motion on which it can act" and (2) "[b]ecause [appellant] failed to file a proper motion to modify or vacate within 30 days of the [trial court] signing its Order, [the trial court] lacks jurisdiction to impose the absurd sanctions requested by Plaintiff."

After a hearing, appellant's motion for sanctions and reinstatement was denied by the trial court. This appeal timely followed. During abatement of this appeal, findings of fact and conclusions of law were filed by the trial court.[2] Subsequently, appellant filed a timely "Request for Additional and Amended Findings of Fact and Conclusions of Law" in which he complained of multiple "inaccuracies" and omissions respecting the trial court's written findings and conclusions.

## II. APPELLANT'S ISSUES

### A. Standard of Review

The issue of whether a court has jurisdiction is a matter of law that is reviewed de novo. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "In reviewing a grant or denial

---

[2] The trial court's findings of fact and conclusions of law stated in part as follows:

**FINDINGS OF FACT**

. . . .

5. The City ultimately fulfilled Plaintiffs requests for public information by making any and all responsive information that Plaintiff was entitled to available to him and fully complying with the Texas Public Information Act ("TPIA").

6. The City had cured any inadvertent prior TPIA noncompliance, and the Court finds the City acted in good faith and in compliance with the TPIA.

7. Plaintiff has not provided any sufficient evidence to support his accusation of continuing noncompliance by the City.

8. The City acted in good faith in its initial cost estimates to Plaintiff and ultimately did not overcharge him, as any inadvertent overcharge was refunded to Plaintiff.

. . . .

**CONCLUSIONS OF LAW**

13. Plaintiff fails to present any cause of action or claim for relief for which this Court has jurisdiction.

. . . .

23. The City has responded to Plaintiffs public information inquiries with full and complete production of suitable copies of the requested information in compliance with the TPIA, and therefore, Plaintiff's claims relating to any alleged TPIA noncompliance are moot.

. . . .

26. Plaintiff is not entitled to receive attorney's fees or litigation costs, because he is pro se and has not substantially prevailed in this suit.

27. Plaintiff bears the full burden to plead facts that affirmatively demonstrate subject matter jurisdiction.

. . . .

28. In this case, Plaintiff has amended his pleadings, and yet failed to meet his burden of proof to demonstrate subject matter jurisdiction, and this Court finds further amendment would be futile.

29. This Court lacks subject matter jurisdiction over Plaintiff's claims, and therefore, this suit must be dismissed with prejudice as a matter of law.

of a plea to the jurisdiction, we determine whether the plaintiff's pleadings, construed in favor of the plaintiff, allege sufficient facts affirmatively demonstrating the court's jurisdiction to hear the case." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012). Evidence relevant to the jurisdictional issue can be introduced and considered at the plea to the jurisdiction stage if needed to determine jurisdiction. *A.P.I. Pipe & Supply*, 397 S.W.3d at 166; *Miranda*, 133 S.W.3d at 227.

The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). The plea to the jurisdiction must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction. *Id.* Likewise, the plea must be granted if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Id.*; *see also Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) (plea to jurisdiction should be granted with prejudice if plaintiff had reasonable opportunity to amend pleadings after filing of plea to jurisdiction).

### B. Applicable Law

Subject matter jurisdiction requires that the party bringing the suit have standing, that there is a live controversy between the parties, and that the case be justiciable. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute." *State Fair v. Riggs & Ray, P.C.*, No. 05-15-00973-CV, 2016 WL 4131824, at *2 (Tex. App.—Dallas Aug. 2, 2016, no pet.) (mem. op.) (citing *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995)); *accord Gomez*, 891 S.W.2d at 245. A case becomes moot if there ceases to be a justiciable controversy between the parties, such as when "the issues presented are no longer 'live.'" *Heckman*, 369 S.W.3d at 162. However, "[t]here are two exceptions that confer jurisdiction regardless of mootness: (1) the issue is capable of repetition,

yet evading review; and (2) the collateral consequences doctrine." *City of Dallas v. Woodfield*, 305 S.W.3d 412, 418 (Tex. App.—Dallas 2010, no pet.) (citing *Gen. Land Office of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990)).

Governmental immunity from suit deprives the trial court of subject matter jurisdiction over claims against governmental entities unless the party suing the governmental entity establishes the State's consent to the suit. *Kaufman Cty. v. Combs*, 393 S.W.3d 336, 342 (Tex. App.—Dallas 2012, pet. denied) (citing *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011)). Such consent to sue must generally be found in actions of the legislature. *Id*. A statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. *Id*. (citing GOV'T CODE § 311.034; *Tooke v. City of Mexia*, 197 S.W.3d 325, 328–29 (Tex. 2006)). "[G]enerally, retrospective monetary claims against the State are barred by immunity." *Morath v. Sterling City Indep. Sch. Dist.*, 499 S.W.3d 407, 420 (Tex. 2016); *see also Thielemann v. Blinn Bd. of Trustees*, No. 01-14-00595-CV, 2015 WL 1247018, at *3 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, no pet.) (mem. op.) (request for monetary damages based on defendant's failure to comply with statute "in the past" constituted request for retrospective relief).

The TPIA, which is contained in chapter 552 of the government code, "guarantees access to public information, subject to certain exceptions." *Kallinen v. City of Houston*, 462 S.W.3d 25, 26 (Tex. 2015). "In any suit filed under [chapter 552], the information at issue may be filed with the court for in camera inspection as is necessary for the adjudication of the case." GOV'T CODE § 552.3221(a). Section 552.3215 of the TPIA "authorizes certain local or state officials to seek declaratory or injunctive relief based on a complaint by 'a person who claims to be the victim of a [PIA] violation,' but only after the governmental body is afforded notice and fails to timely cure the alleged violation." *Paxton v. City of Dallas*, 509 S.W.3d 247, 252 (Tex. 2017); *see* GOV'T

CODE § 552.3215(a)–(k). Specifically, that section states in part "[a]n action for a declaratory judgment or injunctive relief may be brought in accordance with this section against a governmental body that violates this chapter." GOV'T CODE § 552.3215(b). An action authorized by section 552.3215 "is in addition to any other civil, administrative, or criminal action provided by this chapter or another law." *Id*. § 552.3215(k). Further, section 552.321(a) of the government code states in part "[a] requestor or the attorney general may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body . . . refuses to supply [1] public information or [2] information that the attorney general has determined is public information that is not excepted from disclosure." *Id*. § 552.321(a). "In an action brought under Section 552.321 or 552.3215, the court shall assess costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails." *Id*. § 552.323(a). Additionally, section 552.269 of the government code provides in part "[a] person who overpays for a copy of public information because a governmental body refuses or fails to follow the rules for charges adopted by the attorney general is entitled to recover three times the amount of the overcharge if the governmental body did not act in good faith in computing the costs. *Id*. § 552.269(b).

### C. Application of Law to Facts

In his first issue, appellant contends the trial court "abuse[d] its discretion and/or err[ed] in not producing a Findings of Fact and Conclusions of Law (FOFCOL) that sufficiently narrowed the issues for this appeal." Appellant asserts in part (1) "[t]he 29 points of the FOFCOL fail to narrow issues for this brief, and thereby further harms Rines," and (2) "[o]n March 18, 2017, Rines filed a Request for Additional and Amended FOFCOL (AFOFCOL) and incorporates his objections to the FOFCOL herein."

Texas Rule of Civil Procedure 298 provides in part that after the trial court files original findings of fact and conclusions of law, "any party may file with the clerk of the court a request for specified additional or amended findings or conclusions" and "[t]he court shall file any additional or amended findings and conclusions that are appropriate within ten days after such request is filed." TEX. R. CIV. P. 298. Additionally, rule 299 states in part, "Refusal of the [trial] court to make a finding requested shall be reviewable on appeal." TEX. R. CIV. P. 299. Rule 298 requires additional findings of fact and conclusions of law only if they relate to "ultimate or controlling issues." *Rich v. Olah*, 274 S.W.3d 878, 886 (Tex. App.—Dallas 2008, no pet.). Further, a trial court is not required to make additional findings of fact that are unsupported in the record, that are evidentiary, or that are contrary to other previous findings. *Id.*

Appellant's argument respecting his first issue asserts he was "forced to guess prior to findings" as to the trial court's basis for its ruling. However, in his reply brief in this Court, he states that complaint was "implicitly mooted" when the trial court filed its original findings and conclusions as described above. Further, to the extent appellant's brief in this Court "incorporates" his "Request for Additional and Amended Findings of Fact and Conclusions of Law" described above, neither that document nor appellant's brief on appeal contains citations to the record to support his assertions respecting those additional and amended findings and conclusions. We conclude appellant's first issue presents nothing for this Court's review. *See* TEX. R. APP. P. 38.1(i); *see also Rich*, 274 S.W.3d at 886.

Next, we address appellant's ninth issue, in which he asserts the trial court erred by granting the City's plea to the jurisdiction based on "conclusory, gatekeeper testimony alone." Appellant complains the City's witnesses lacked personal knowledge and offered only testimony that was conclusory. Specifically, appellant asserts in part (1) "[t]he City fails to provide the time, place, and the exact nature of the alleged transfer of information to the Civil Service Director or the

search conducted to 'discover' the missing information specified by Rines and therefore the City failed to show any of the witnesses have any related personal knowledge"; (2) "Miller states his knowledge is limited to the optional G-File (optional file) and that he does not have personal knowledge of the mandatory A-File (Civil Service file)"; (3) Ladd's testimony that after appellant complained that there were some "gaps" in what he had received, the City "just reproduced everything" is "not even supported by summary evidence" because "a reasonably intelligent person can see" that the second disk produced "contains much less" than the previous disks; and (4) "Ladd's testimony that she 'asked all departments to ensure that there were no documents missing from any files' is 'another ipse dixit conclusory statement with the City providing no evidence of such communication.'"

The City responds that the record "contradicts this argument" and shows testimony by Ladd and the other witnesses that "offers the specific steps taken by [the City] to comply with the TPIA and provide Appellant with all responsive documents."

The record shows that at the hearing on the City's plea to the jurisdiction, Melinson described her job responsibilities and the steps taken by her to provide responsive documents respecting appellant's requests for information. During appellant's cross-examination of Melinson, appellant stated to the trial court, "It's all hearsay. I want someone who has first hand knowledge of the civil service files I requested." The record does not show a ruling by the trial court as to that objection. Then, Miller testified as to how the City "handles" civil service files, described the steps he took to respond to appellant's requests, and stated that the police department maintains "G-files," but not "A-files," which are "under the control and direction of the civil service director." Further, Ladd testified as to her responsibilities and the steps taken by her to ensure the information requested by appellant was provided to him, including both "A-files" and

–13–

"G-files." Appellant did not make objections to the testimony of Miller or Ladd respecting the search for responsive documents.

As to appellant's complaints of "lack of personal knowledge" respecting the production of information and conclusory testimony, the record shows his only objection raised on those grounds in the trial court as to the testimony of the City's witnesses, stated above, was not ruled upon. *See* TEX. R. APP. P. 33.1 (preservation of complaint for appellate review requires timely request or objection and ruling by trial court). Therefore, any such objection was not preserved for review on appeal. *Id*. We conclude appellant's ninth issue presents nothing for this Court's review. *See id*.

Now, we address together appellant's third, fourth, fifth, sixth, seventh, eighth, tenth, eleventh, and twelfth issues. In his eleventh issue, appellant asserts the trial court erred by "[d]ismissing this case 'with prejudice' while there is still remaining controversy, i.e. whether the City is refusing to release missing permanent information or under what authority has the City destroyed same." Further, appellant contends that to the extent his claims are determined to be moot, the "capable of repetition, yet evading review" exception applies. Additionally, in his third, fourth, fifth, sixth, seventh, eighth, tenth, and twelfth issues, appellant (1) asserts several statutory bases for jurisdiction, including section 552.269 of the government code, the Open Meetings Act, the Deceptive Trade Practices Act, and "Tex. Civil Practices and Remedies Code Chapters 37 and 65," and (2) cites two cases he contends support his position that dismissal was improper: *Kallinen*, which he describes as "holding that district courts have subject matter jurisdiction under the TPIA whether the Requestor chooses, as an option, to follow the procedure described in § 552.3215(a-j), or not," and *Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 122 (Tex. App.—Austin 2003, no pet.), in which, according to appellant, a city "sued the AG, settled and agreed to release missing information such as non-supervisory witness statements specifically referenced therein and still not released by the City in this cause."

The City responds in part that the trial court did not err by dismissing appellant's claims with prejudice because (1) governmental immunity barred the recovery of any retrospective monetary damages; (2) appellant's other claims present no justiciable issue and are moot; and (3) no exception to the mootness doctrine is applicable. Further, the City contends that to the extent appellant asserts arguments based on statutory causes of action he did not assert in the trial court, those arguments present nothing for this Court's review.

The record shows appellant's contentions on appeal respecting the "Open Meetings Act," "Deceptive Trade Practices Act," and "Tex. Civil Practices and Remedies Code Chapters 37 and 65" were not asserted in the trial court and therefore present nothing for this Court's review. *See* TEX. R. APP. P. 33.1. Additionally, as described above, the City's jurisdictional evidence demonstrates it searched for the requested information, officially requested responsive documents from relevant individuals, and produced to appellant all responsive information it was able to locate and obtain. Although appellant contends in his appellate brief that he "has presented specific evidence that the City continues to refuse to release important permanent public information," the "evidence" cited by him respecting such noncompliance consists of descriptions by him of items he contends should exist and are "missing" from the information provided to him. Further, to the extent appellant relies on the exhibits attached to his "Objections to Defendant's Answer" described above, the record shows (1) the Attorney General concluded in part in the April 28, 2015 final amended determination that "[a] suit to retrieve documents that don't exist any longer would be fruitless," and (2) although appellant characterizes the performance evaluation chart described above as showing "missing" evaluations, that chart does not show those allegedly "missing" evaluations exist or that the City is withholding those allegedly "missing" evaluations in violation of the TPIA. Also, in the case of *Abbott v. City of Corpus Christi* cited by appellant, the court of appeals concluded "when an investigation is made into [a police officer's] misconduct, all

–15–

investigatory materials—including background documents such as complaints, witness statements, and documents of like nature from individuals who were not in a supervisory capacity—must be placed in the [officer's A-file] if the misconduct results in disciplinary action." *See* 109 S.W.3d at 122. Appellant does not explain, and the record does not show, how that case demonstrates the existence of responsive, unproduced items in the case before us. On this record, we cannot agree with appellant's position that he has demonstrated the City "continues to refuse to release important permanent public information." *See City of Dallas v. Dallas Morning News, LP*, 281 S.W.3d 708, 716 (Tex. App.—Dallas 2009, no pet.) (concluding affidavit of requestor in TPIA case was "legally insufficient evidence" where requestor's conclusions assumed existence of responsive, unproduced e-mails).

We conclude the City conclusively established it complied with the TPIA as to appellant's requests. *See City of El Paso v. Abbott*, 444 S.W.3d 315, 324 (Tex. App.—Austin 2014, pet. denied) (where city's jurisdictional evidence established city searched extensively for responsive documents, officially requested responsive documents from named individuals, and produced to requestor all documents it was able to locate and obtain, city conclusively established for jurisdictional purposes that it was not unwilling or refusing to supply public information pursuant to TPIA). Therefore, we conclude appellant's complaints respecting the City's noncompliance with his TPIA requests, including his requests for temporary injunctive relief pertaining to those requests, are moot. *See Kessling v. Friendswood Indep. Sch. Dist.*, 302 S.W.3d 373, 385 (Tex. App.—Houston [14th Dist.] 2009, pet denied) (TPIA claim became moot when request was fulfilled). Further, appellant contends in his brief on appeal that this lawsuit "is an ultra vires case" and therefore "an ultra vires exception to immunity exists." For the same reasons described above, even assuming without deciding that governmental officials may be sued for violations of the TPIA and that appellant's petition alleged such claims, we conclude appellant did not raise a fact question

as to whether a governmental official violated the TPIA such that immunity would be waived for "ultra vires" acts. *See City of Galveston v. CDM Smith, Inc*., 470 S.W.3d 558, 572 (Tex. App.— Houston [14th Dist.] 2015, pet. denied) (where evidence conclusively showed city did not refuse to supply requested TPIA information, requestor failed to raise fact question on whether officials violated TPIA such that immunity would be waived for ultra vires acts).

In light of our conclusions above respecting mootness, we consider appellant's contention that the "capable of repetition, yet evading review" exception to the mootness doctrine is applicable.[3] That exception applies only in rare circumstances and is limited to situations where the following circumstances are simultaneously present: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, or the party cannot obtain review before the issue becomes moot, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *Woodfield*, 305 S.W.3d at 419–20. When determining the "evading review" element, the proper inquiry is whether the challenged activity is by its very nature short in duration so that it could not, or probably would not, be able to be adjudicated while fully live. *Id*. at 420. "The plaintiff must show that the time between the challenged action and its expiration is always so short as to evade review." *Id*.

Appellant asserts in his appellate brief (1) "the City has repeatedly shown an intrinsic disdain for the [TPIA] inside its [police department] as described in [*Staten v. Tatom*, 2012 WL 975017 (5th Cir. 2012)]," in which a requestor "was arrested when he came to the [City's police department] to obtain the video he requested under the [TPIA]"; (2) "[s]uch retaliation by the [City's police department] is the very reason [appellant] chose not to freely view the requested information at the City's campus"; and (3) "[s]ince the City settled out of court with Mr. Staten,

---

[3] The second exception to the mootness doctrine described above, the "collateral consequences" exception, has been applied when prejudicial events have occurred "whose effects continued to stigmatize helpless or hated individuals long after the unconstitutional judgment had ceased to operate." OXY, U.S.A., 789 S.W.2d at 571. Appellant does not contend, and the record does not show, that exception is applicable in this case. *See Reule v. RLZ Invs*., 411 S.W.3d 31, 33 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (declining to apply collateral consequences exception where appellant failed to explain why perceived disadvantage would persist after judgment was vacated).

–17–

such retaliatory practices related to the PIA have escaped review by the courts." Appellant does not explain how his argument demonstrates "the time between the challenged action and its expiration is always so short as to evade review." *See Woodfield*, 305 S.W.3d at 420. We conclude the "capable of repetition, yet evading review" exception to the mootness doctrine is inapplicable in this case. *See id.*

As to appellant's remaining claims for injunctive relief, appellant requests permanent injunctions respecting the City's maintenance of civil service files and provision of civil service data to the public. Appellant contends those claims for injunctive relief "invoked the general jurisdiction of [the trial court]" because, according to appellant, the Texas Supreme Court concluded in *Kallinen* that a requestor "has the option to intervene, or become a party in an injunctive suit under TGC §552.3215." The City responds that appellant "fails to identify any statutory right" to the permanent injunctive relief he requests.

In *Kallinen*, a requestor sued a city to compel disclosure of information pertaining to traffic light cameras. *See* 462 S.W.3d at 27. The city produced some documents, but withheld others and requested an Attorney General opinion on whether the TPIA excepted the withheld information from disclosure. *Id.* Pursuant to section 552.306 of the TPIA, the Attorney General had forty-five business days to issue an opinion. *Id.* Before that forty-five day time period elapsed and before the Attorney General ruled, the requestor sued for a writ of mandamus pursuant to section 552.321(a) to compel the city to disclose the withheld information. *Id.* The city filed a plea to the jurisdiction, arguing the trial court lacked jurisdiction over the lawsuit until the Attorney General ruled. *Id.* The trial court overruled the plea and the court of appeals reversed. *Id.* However, the supreme court reversed the court of appeals. *Id.* The supreme court observed that the parties were in agreement that "the only basis for the trial court's jurisdiction is Section 552.321(a) of the [TPIA]." *Id.* Then,

that court concluded a requestor of information "certainly has the choice to await the Attorney General's decision," but "is not required to defer a suit for mandamus." *Id*. at 28.

To the extent appellant asserts the case before us is a mandamus action pursuant to section 552.321(a), that section states in part "[a] requestor or the attorney general may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body . . . refuses to supply [1] public information or [2] information that the attorney general has determined is public information that is not excepted from disclosure." GOV'T CODE § 552.321(a). For the same reasons described above respecting mootness, we conclude jurisdiction pursuant to section 552.321(a) has been negated in this case. *See City of El Paso v. Abbott*, 444 S.W.3d at 324 (where city conclusively established it was not unwilling or refusing to supply public information pursuant to TPIA, section 552.321(a) was inapplicable). Consequently, unlike in *Kallinen*, the record in this case does not show jurisdiction pursuant to section 552.321(a).

Further, as to appellant's position that *Kallinen* allows him to bring an action as a private litigant for injunctive relief pursuant to section 552.3215, *Kallinen* did not address or involve section 552.3215. *See* 462 S.W.3d at 27. Moreover, appellant does not explain, and the record does not show, how this lawsuit complies with the requirements of section 552.3215. *See* GOV'T CODE § 552.3215(b) ("An action for a declaratory judgment or injunctive relief may be brought **in accordance with this section** against a governmental body that violates [the TPIA]." (emphasis added)); *id*. §§ 552.3215(e)-(j) (requiring complaint to be filed with district or county attorney and describing scheme by which action on complaint may be brought by government official); *see also Paxton*, 509 S.W.3d at 252 (section 552.3215 "authorizes certain local or state officials to seek declaratory or injunctive relief based on a complaint by 'a person who claims to be the victim of a [TPIA] violation'"). On this record, we disagree with appellant's position that section 552.3215

–19–

provided a basis for jurisdiction respecting his claims for permanent injunctive relief. *See* GOV'T CODE § 552.3215.

Next, we address appellant's claims for monetary relief, which consist of requests for (1) an amount equal to "three times the initial estimates totaling $1192" pursuant to government code § 552.269(b); (2) "delay and labor costs" associated with the City's alleged lack of compliance with his TPIA requests that currently "total $164,000 and $156,960 respectively and continue[] to accrue until all requested information is received"; (3) "additional labor charges" of $3,600 associated with the City's alleged lack of compliance with his second TPIA request; and (4) "all costs of this litigation" pursuant to government code section 552.323(a). We address these requests in turn.

First, as to section 552.269(b), appellant contends in part, "Granted, the City received a favorable opinion from Assistant Attorney General Strain on August 28, 2014. However, subsequent releases and [Miller's] testimony invalidates the opinion and begs for review of entitlement." As described above, under section 552.269(b), "[a] person who overpays for a copy of public information because a governmental body refuses or fails to follow the rules for charges adopted by the attorney general is entitled to recover three times the amount of the overcharge if the governmental body did not act in good faith in computing the costs." GOV'T CODE § 552.269(b). Appellant's arguments do not address the computation of the costs in question or whether the City followed "the rules for charges adopted by the attorney general," *see id.*, nor does appellant cite evidence in the record respecting those matters. Further, the record shows (1) the Attorney General's August 28, 2014 letter to appellant stated in part that because the City "calculated the estimated and actual charges using the rules established by this office and has provided an explanation for the reduction of the estimated charges," the Attorney General is "unable to find the city did not act in good faith," and (2) Ladd stated in her October 19, 2015

affidavit that the City has not "acted in bad faith" toward appellant. On this record, we conclude the City conclusively established the inapplicability of section 552.269(b).

Second, we consider appellant's claims for "delay and labor costs" associated with the lack of compliance with his TPIA requests. Appellant contends those costs go beyond prohibited retrospective relief. *See Thielemann*, 2015 WL 1247018, at *3. However, in light of our conclusion above that appellant's claims respecting lack of compliance with his TPIA requests became moot when the City provided appellant with the information responsive to those requests, we need not further address those costs.

Third, section 552.323 allows recovery for "costs of litigation" only where the plaintiff "substantially prevails." GOV'T CODE § 552.323(a). A TPIA plaintiff "does not become a 'prevailing party' merely because the defendant voluntarily changes its conduct in a manner mooting the controversy." *Gates v. Tex. Dep't of Family & Protective Servs*., No. 03-15-00631-CV, 2016 WL 3521888, at *7 (Tex. App.—Austin June 23, 2016, pet. denied) (mem. op.). Appellant does not explain, and the record does not show, how section 552.323 allows recovery by him in this case. *See id.*; GOV'T CODE § 552.323.

Based on the analysis above, we conclude the City conclusively negated jurisdiction as to all of appellant's claims. Therefore, the trial court did not err by granting the City's plea to the jurisdiction and dismissing his claims with prejudice. *See A.P.I. Pipe & Supply*, 397 S.W.3d at 166; *Sykes*, 136 S.W.3d at 639.

In his second issue. Appellant contends the trial court abused its discretion by (1) "ordering the oral testimony prohibited by TRCP Rule 166a"; (2) "allowing the format of the evidentiary hearing to be that of an examine/cross-examine bench trial"; (3) "advocating for the defense by suggesting that the identified missing permanent information may not have ever existed when clear evidence suggests otherwise"; (4) "refusing to order an in camera review of the information at

issue which contains permanent public information specifically ruled by the Attorney General to be released and can be shown, with a preponderance of the evidence, to have not been released"; and (5) "refusing to compel discovery."

We address together appellant's first three contentions described above. Specifically, appellant asserts in his brief on appeal (1) he "was completely surprised" that the hearing described above on the City's plea to the jurisdiction and motion to dismiss "was conducted as a bench trial with oral testimony and in an examine-cross-examine venue"; (2) "it was [appellant's] belief that the hearing was for the purposes described under Rule 166a 'Case Not Fully Adjudicated on Motion'"; and (3) during the hearing, the trial court made statements that "advocate[ed], in error, that missing performance evaluations were simply not created." Appellant does not describe, and the record does not show, any objection by him in the trial court respecting those complaints. Therefore, we conclude those complaints present nothing for this Court's review. *See* TEX. R. APP. P. 33.1.

As to appellant's contention respecting the trial court's refusal to order an in camera review as requested by him, appellant asserts (1) "an in camera review is legislated due process and course of law"; (2) "[the trial court's] failing to review the information violates [appellant's] civil right to due process and due course of law"; (3) "the trial court abused its discretion in not ordering the in camera review, as the documents themselves present evidence of continuously withheld information"; and (4) "given the extreme delays caused by the unsupported plea to the jurisdiction," "it really is a matter of judicial efficiency to first require an in camera review of both Civil Service and intra-departmental files." Appellant cites no portion of the record, and we have found none, in which he asserted his "due process" complaints described above in the trial court. *See* TEX. R. APP. P. 33.1. Consequently, those complaints present nothing for this Court's review. *See id.* Further, (1) appellant provides no citation to the record respecting his assertion as to

"evidence of continuously withheld information" *see* TEX. R. APP. P. 38.1(i), and (2) we concluded above that the City's plea to the jurisdiction was not "unsupported." On this record, we disagree with appellant's position that the trial court's refusal to order an in camera review constituted an abuse of discretion.

Additionally, as to appellant's complaint respecting the trial court's refusal to compel discovery, appellant asserts the trial court (1) erred when it "obstruct[ed] discovery of additional parties" by dismissing this case "prior to compelling reasonable discovery" of "potential parties" and (2) abused its discretion by dismissing the case "knowing that [appellant] was actively discovering the proper individuals in their official capacities to enjoin in the suit in order to address the ultra vires related relief sought." However, the record shows the City's response to appellant's "Initial Disclosures" described above included the City's statement that it "is not currently aware of any potential parties to this litigation." To the extent appellant argues the trial court was required to compel additional responses by the City to those same requests for disclosures based on appellant's unsupported assertions that "missing" records were withheld or destroyed by the City, appellant cites no authority for that position. *See* TEX. R. CIV. P. 192.4 (discovery should be limited by trial court "if it determines, on motion or on its own initiative . . .that . . . the discovery sought is unreasonably cumulative or duplicative"). On this record, we conclude the trial court did not abuse its discretion respecting discovery of potential parties.

Finally, the record shows appellant's complaints in his thirteenth, fourteenth, and fifteenth issues were not raised by him in the trial court. Specifically, appellant did not assert in the trial court his complaints in those issues respecting the "Texas Disciplinary Rules of Professional Conduct," "Texas Code of Judicial Conduct," or violations of the U.S. and Texas constitutions alleged by him. We conclude those complaints present nothing for this Court's review. *See* TEX. R. APP. P. 33.1.

We decide against appellant on his fifteen issues.[4]

## III. CONCLUSION

We decide appellant's fifteen issues against him. The trial court's order is affirmed.

151321F.P05

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

---

[4] Subsequent to the filing of this appeal, both sides filed respective pre-submission motions for sanctions in this Court, including a December 19, 2016 motion of appellant for sanctions against the City based on matters pertaining to this appeal and a February 10, 2017 motion of the City for sanctions against appellant based on matters pertaining to this appeal. After due consideration, the parties' motions for sanctions in this Court are denied.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARK RINES, Appellant

No. 05-15-01321-CV        V.

CITY OF CARROLLTON, TEXAS,
Appellee

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-07615.
Opinion delivered by Justice Lang, Justices
Brown and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee CITY OF CARROLLTON, TEXAS, recover its costs of
this appeal from appellant MARK RINES.

Judgment entered this 13th day of February, 2018.